**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

United States of America,                    Court File No. 25-cv-04571 (PJS/DJF)

Plaintiff,

v.

Board of Directors of Special School
District No. 1, Minneapolis Public Schools,
Special School District No. 1, Minneapolis
Public Schools, and Lisa Sayles-Adams,
Superintendent,

Defendants.

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS**

**INTRODUCTION**

Section 707 of Title VII was designed to remedy systematic discrimination—the
kind that leaves behind identifiable victims, statistical evidence of harm, and a record of
discriminatory conduct repeated enough to be called, in the Supreme Court's words, an
employer's "standard operating procedure." *Int'l Bhd. of Teamsters v. United States*, 431
U.S. 324, 336 (1977). This is not such a case.

After a full pre-suit investigation culminating in a formal findings letter, DOJ has
not alleged a single instance in which the challenged contractual provisions were actually
applied to anyone. No teacher has been identified as displaced or denied reinstatement
under the challenged provisions. The Complaint's operative allegations are pleaded

entirely "upon information and belief," without the supporting factual content the plausibility standard demands. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

DOJ's opposition confirms rather than cures this deficiency. DOJ concedes that "discovery may reveal MPS teachers who suffered injury." That concession is fatal to the Complaint at the pleading stage: a plaintiff who must await discovery to determine whether anyone was harmed has not plausibly alleged that harm has occurred. On the BMT MOA claims, DOJ concedes that its theory is only that Defendants "may very well" reinstate the expired program in a future CBA—precisely the kind of speculative, hypothetical future injury the Supreme Court has held insufficient to satisfy Article III. And on the Rule 19 problem, DOJ offers no solution that does not require this Court to adjudicate the Union's bargained-for contractual rights in the Union's absence.

The opposition also fails on the law. DOJ recharacterizes the *Teamsters* standard as inapplicable to "classification" claims under § 703(a)(2)—but offers no authority holding that the choice of statutory theory dissolves § 707(a)'s independent threshold requirement. DOJ invokes *Weber* and *Johnson* only to "preserve" for appellate review the argument that they were effectively overruled—a concession that they remain binding on this Court. And DOJ reads § 703(a)(2)'s "would deprive" language to eliminate any requirement that a challenged provision actually operate, a theory the Seventh Circuit expressly rejected in the very case DOJ cites. *EEOC v. AutoZone, Inc.*, 860 F.3d 564, 568 (7th Cir. 2017).

2

The Complaint should be dismissed. The absence of identified victims is not a technical pleading deficiency DOJ can remedy on remand—it is a substantive admission that § 707, as construed in *Teamsters*, has not been satisfied. The BMT MOA claims seek to enjoin an agreement that no longer exists. And the Union whose rights would be extinguished by the relief DOJ seeks is absent through no fault of its own. Each defect is independently fatal.

## REPLY ARGUMENT

## I.      THE COMPLAINT FAILS TO STATE A CLAIM.

### A.      DOJ's Attempted Recharacterization of the *Teamsters* Standard Does Not Save the Complaint.

DOJ argues that this case does not require proof of systematic discriminatory conduct because it is framed as a § 703(a)(2) "classification and limitation" claim rather than a § 703(a)(1) discriminatory-act claim, and that *Teamsters* is therefore inapplicable. This argument fails for two independent reasons.

First, § 707(a)'s threshold requirement is independent of which subsection of § 703 is invoked. Section 707(a) authorizes suit only where the Attorney General has reasonable cause to believe a person "*is engaged* in a *pattern or practice* of resistance to the full enjoyment of any of the rights secured by [Title VII]." 42 U.S.C. § 2000e-6(a) (emphasis added). This language unambiguously requires current, ongoing engagement in a "pattern or practice"—a term *Teamsters* construed to require that discrimination be "repeated, routine, or of a generalized nature," not "single, insignificant, isolated acts." *Teamsters*, 431 U.S. at 366 n.16. DOJ's argument is that electing a § 703(a)(2) theory

rather than a § 703(a)(1) theory changes what § 707(a) requires. It does not. Section 707(a)'s authorization to sue operates as a threshold jurisdictional predicate, not a default that a theory choice can override. DOJ cites no authority holding that § 703(a)(2) claims under § 707 are categorically exempt from this threshold showing.

Second, the Complaint confirms that no systematic conduct has been alleged. DOJ challenges two provisions: Article 15's excessing preferences and the expired BMT MOA. The Complaint does not allege that any teacher was actually displaced or skipped over for reinstatement under Article 15, nor that the BMT MOA was *ever* applied to anyone. The core operative allegations are pleaded entirely "upon information and belief," without supporting factual content. The federal pleading standards require more. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A formulaic recitation of contractual terms followed by a legal conclusion that those terms constitute a "pattern or practice" does not satisfy the plausibility standard.

**B.      DOJ's "Conditional Tense" Reading of § 703(a)(2) Does Not Eliminate the § 707(a) Pattern-or-Practice Requirement.**

DOJ argues that § 703(a)(2)'s prohibition on classifications that "would deprive or tend to deprive" employees of opportunities encompasses potential rather than consummated harm—and that mere contractual classification on paper therefore satisfies both § 703(a)(2) and § 707(a). *Plaintiff's Opposition to Defendant's Motion to Dismiss* ("*Pl. Opp.*"), ECF No. 15, at 10–11. This argument fails at two levels.

First, even accepting the DOJ's "conditional tense" reading of § 703(a)(2), § 707(a) independently imposes its own threshold requirement. Section 707(a) authorizes suit only upon a finding that an employer "is engaged in a pattern or practice"—language the *Teamsters* Court described as requiring conduct that is "repeated, routine, or of a generalized nature." *Teamsters*, 431 U.S. at 336 n.16. A classification provision that has never been shown to have operated cannot be "repeated" or "routine." DOJ's reading would make § 707(a)'s pattern-or-practice requirement surplusage whenever a § 703(a)(2) theory is invoked—an interpretation courts must reject. *See Duncan v. Walker*, 533 U.S. 167, 174 (2001) ("It is our duty to give effect, if possible, to every clause and word of a statute.").

Second, *AutoZone* does not support DOJ's position—it forecloses it. The Seventh Circuit affirmed summary judgment for the employer, expressly rejecting the EEOC's argument that "*any* action to limit, segregate, or classify employees because of race *automatically* violates [§ 703(a)(2)]." *EEOC v. AutoZone*, 860 F.3d 564, 568 (7th Cir. 2017) (emphasis original). The court held instead that § 703(a)(2) requires "case-specific proof that the challenged employment action" had the effect of depriving or tending to deprive employment opportunities. *Id.* DOJ advances precisely the same "automatic violation" theory here. *See Pl. Opp.* at 11 ("Thus, the classifications and limitations at issue are themselves violations of the text of the statute, even absent specific instances of discrimination against identified individuals."). That theory was rejected in *AutoZone*, and it should be rejected here.

5

Nor does the "conditional tense" of § 703(a)(2) save DOJ's § 707(a) claim even on its own terms. Federal courts have recognized that pattern-or-practice suits "characteristically involve allegations of discrimination on a large scale." *EEOC* v. *Bass Pro Outdoor World, L.L.C.*, 826 F.3d 791, 801 (5th Cir. 2016). A provision that "would deprive" only if triggered—and has never been alleged to have been triggered—does not satisfy § 707(a)'s requirement that the discriminatory practice be the employer's "standard operating procedure." *Teamsters*, 431 U.S. at 336. DOJ's separate argument that "the exceptions *are* the pattern" because they automatically apply whenever conditions are met simply restates the problem: DOJ has not alleged the conditions have ever been met.

### C.    The Cases DOJ Relies Upon Are Distinguishable.

DOJ's reliance on *U.S. v. Bd. of Educ. for the Sch. Dist. of Philadelphia*, 911 F.2d 882 (3d Cir. 1990); *EEOC v. Catholic Healthcare West*, 530 F.Supp.2d 1096 (C.D. Cal. 2008); *EEOC v. AutoZone*, 860 F.3d 564 (7th Cir. 2017); and *EEOC v. Doherty Enterprises*, 126 F.Supp.3d 1305 (S.D. Fla. 2015) is misplaced. With the exception of *Bd. of Educ. for the Sch. Dist. of Philadelphia*,[1] none involved a § 707 enforcement action by the United States, and none involved a seniority-dominant system in which the challenged provision operates as a narrow exception rather than the operative rule.

---

[1]    Even though *Bd. of Educ. for the Sch. Dist. of Philadelphia* involved a § 707 pattern-or-practice claim brought by the United States, it arose through an EEOC investigation following a charge alleging discrimination filed by an employee. 911 F.2d at 885-86.

6

*CVS Pharmacy* confirms Defendants' position. The Seventh Circuit held that § 707(a) "does not create a broad enforcement power for the EEOC to pursue non-discriminatory employment practices that it dislikes." *EEOC v. CVS Pharmacy, Inc.*, 809 F.3d 335, 341 (7th Cir. 2015). DOJ responds that *CVS Pharmacy* is distinguishable because the severance agreements were facially neutral, while Article 15 classifies employees by race. *Pl. Opp.* at 13-14. That distinction helps Defendants: it confirms *Weber* and *Johnson* are the directly controlling precedents—cases that expressly address when facially race-conscious voluntary affirmative action programs are lawful under Title VII.

Neither *Philadelphia Board of Education* nor *Catholic Healthcare West* undermines this conclusion. In each, the challenged policy was mandatory, universally applied, and had no neutral default. Article 15 is none of these things. It is an exception to a seniority-based default, applicable only in discrete triggering circumstances that DOJ has not alleged have ever occurred. In *Philadelphia Board of Education*, the Third Circuit held that U.S. failed to show an unlawful pattern or practice given the absence of examples of unlawful discrimination and the fact that the government's case was grounded upon speculation. 911 F.2d at 893. *AutoZone* similarly underscores rather than defeats this point: The Seventh Circuit's holding depended on a facially mandatory, race-explicit assignment policy that was the operative rule governing all affected employees. *Doherty Enterprises* is similarly inapposite—that case involved a universally applied arbitration agreement imposing a mandatory, system-wide burden with no neutral default and no triggering condition. The challenged provisions here impose no burden at all

7

unless and until discrete conditions are met, and DOJ has not alleged those conditions have ever been satisfied.

**D.      *Weber* and *Johnson* Govern This Case and Are Binding on This Court.**

DOJ expressly states that it "preserves" for appellate review its argument that *Weber* and *Johnson* were effectively overruled by *Ricci v. DeStefano*, 557 U.S. 557 (2009), *Bostock v. Clayton Cty.*, 590 U.S. 644 (2020), *Students for Fair Admissions, Inc. v. Harvard Coll.*, 600 U.S. 181 (2023), and *Ames v. Ohio Dept. of Youth Serv.*, 605 U.S. 303 (2025). That concession is dispositive. Only the Supreme Court can overrule its own decisions, and it has not done so in any of the cases referenced by the DOJ. *Agostini v. Felton*, 521 U.S. 203, 237 (1997); *Fleck v. Wetch*, 937 F.3d 1112, 1115 (8th Cir. 2019) ("[W]e must follow Supreme Court precedent directly on point, even if later decisions seem to undermine its rationale."). *Weber* and *Johnson* remain binding on this Court.

DOJ's fallback—that *Weber/Johnson* presents an affirmative defense not resolvable on a Rule 12(b)(6) motion—is self-defeating. DOJ cannot simultaneously argue that *Weber/Johnson* compliance is a factual question reserved for later stages while also arguing at length that the CBA's stated legal justification is "conclusory." *Pl. Opp.* at 19.

The Complaint incorporates the CBA text, which expressly states that Article 15 is intended to remediate identified past discrimination by MPS. The Court may therefore consider the CBA's stated justification at the pleading stage. Where an affirmative defense is apparent from the "face of the complaint"—including "public records and materials embraced by the complaint" and "material[s] attached to the complaint"—a

Rule 12(b)(6) motion may appropriately raise that defense. *C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 764 (8th Cir. 2012); *Noble Systems Corp. v. Alorica Central, LLC*, 543 F.3d 978, 983 (8th Cir. 2008); *see also* Raising Affirmative Defenses by Motion, 5 FED. PRAC. & PROC. CIV. § 1277 (4th ed.) (collecting authority).

The CBA provisions satisfy each *Weber*/*Johnson* factor on the face of the pleading: Article 15 identifies as its stated basis historical discrimination by MPS—not generalized societal discrimination, as DOJ erroneously asserts, *see* Pl. Opp. at 17; seniority remains the operative default, with diversity considerations applying only as narrow exceptions; and Article 15 includes an express sunset provision tied to labor market parity. DOJ's objections to the adequacy of the CBA's stated justification may go to the ultimate merits of the *Weber*/*Johnson* defense in an as-applied proceeding. They have no bearing here, where DOJ merely asserts a facial attack.

## II.   THIS COURT LACKS SUBJECT MATTER JURISDICTION OVER THE BMT MOA CLAIMS.

DOJ lacks standing to seek injunctive relief with respect to the BMT MOA, which expired by its own terms on June 30, 2025—more than five months before this suit was filed. While DOJ conflates statutory and Article III standing, and standing with mootness, the jurisdictional result is the same: this Court lacks subject matter jurisdiction over the BMT MOA claims.

The adjudicatory power of all federal courts is limited to "cases and controversies" under Article III. U.S. Const., art. III, § 2, cl. 1. Standing is "an essential and unchanging part of the case-or- controversy requirement of Article III." *Lujan v. Defenders of*

9

*Wildlife*, 504 U.S. 555, 560 (1992). Congressional conferral of a statutory right to sue does not override Article III's requirements. *Heglund v. Aitkin County*, 871 F.3d 572, 577 (8th Cir. 2017) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338-41(2016)). To obtain injunctive relief, a plaintiff must demonstrate a likelihood of future injury; past exposure to allegedly illegal conduct does not establish a present case or controversy. *City of Los Angeles v. Lyons,* 461 U.S. 95, 105 (1983); *O'Shea v. Littleton,* 414 U.S. 488, 495 (1974).

Because the BMT MOA expired before this action was commenced, DOJ lacked standing at the time of filing. As *United States v. City of Tampa* recognized, standing is assessed "at the time the action commences." 739 F.Supp.3d 1055, 1064 n.1 (M.D.Fla. 2024) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 187 (2000)). Because the defect here is lack of standing at commencement, the voluntary cessation doctrine—which addresses claims that become moot during litigation—has no application.

Alternatively, even if mootness were at issue, the voluntary cessation doctrine does not apply. The BMT MOA expired by its own terms—not through any voluntary act by Defendants. The agreement's express sunset provision rendered it inoperative on June 30, 2025, a date fixed years in advance by the contract itself. DOJ's argument that MPS "decided not to renew the program" only after the investigation began conflates two distinct events: the MOA's scheduled expiration and the separate decision whether to include a renewal provision in the successor CBA. The first event was not voluntary cessation. A doctrine designed to prevent strategic evasion of judicial review has no application where a provision has simply run its agreed course.

10

Moreover, the Complaint does not allege that MPS has proposed renewing the BMT MOA or has taken any steps toward a substantially similar agreement. The Miller Declaration establishes that the successor 2025–27 CBA contains no renewal of the BMT MOA. *Miller Decl.* ¶¶ 3–6. DOJ's response—that MPS "may very well reinstate a Black Men Teach program in yet another future CBA," *Pl. Opp.* at 25—is precisely the kind of "conjectural or hypothetical speculation" that the Supreme Court has found as insufficient to satisfy Article III. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 97 (2013) (citation omitted).

Finally, DOJ has not identified a single individual harmed by the expired BMT MOA, nor explained how enjoining the implementation of a non-existent agreement would remedy any past harm. The Complaint seeks only forward-looking relief—relief that cannot redress historical injuries caused by a provision that ceased operating before the suit was even filed. Enjoining an agreement that no longer exists provides no relief at all.

## III.    THE UNION IS AN INDISPENSABLE PARTY.

DOJ's Rule 19 response rests on two arguments: (1) the CBA's severability clause protects the Union's interests adequately, and (2) the Union can be joined as a non-adverse party. Neither holds up.

A severability clause does not resolve Rule 19. It determines what contractual provisions survive a judicial ruling—not whether the Union's interests are affected by that ruling or whether the Union can adequately protect those interests without being heard. The Union negotiated Article 15 and the BMT MOA and holds independent contractual rights to their enforcement through the grievance and arbitration mechanism,

as well as pursuant to Minnesota statute. Any declaration that those provisions are unlawful would extinguish rights it bargained for without its participation. DOJ compounds this error by arguing that the Union has no "cognizable interest" in "illegal provisions." *See Pl. Opp.* at 4, 29. But whether these provisions are illegal is the very question this Court is being asked to decide, and the Union must be heard on that question. DOJ's argument is circular: it assumes the answer in order to deny the Union a voice in reaching it.

The Union cannot be joined as a non-adverse party. Section 707 authorizes the Attorney General to bring enforcement actions against government employers. It does not confer jurisdiction over unions. The EEOC—not the Attorney General—has statutory authority to bring Title VII enforcement actions against labor organizations. 42 U.S.C. § 2000e-5(f)(1). DOJ acknowledges this but never explains how this Court can acquire jurisdiction over the Union through Rule 19 joinder when the underlying statute does not confer it. Rule 19 is a joinder mechanism; it cannot create subject matter jurisdiction where the underlying statute withholds it.

DOJ invokes *EEOC v. Peabody Western Coal Co.*, 610 F.3d 1070 (9th Cir. 2010), and *EEOC v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086 (6th Cir. 1974), for the proposition that a union may be joined as a non-adverse Rule 19 party even where the government has no direct cause of action against it. *Pl. Opp.* at 32–33. But both cases involved the EEOC—an agency that *does* have statutory jurisdiction over labor organizations. Extending those cases to the Attorney General would override a deliberate

congressional distinction between the Attorney General's enforcement authority and the EEOC's. Rule 19 cannot accomplish that.

The Union will suffer real prejudice from a judgment extinguishing its bargained-for rights without its participation. A judgment without the Union also creates a substantial risk of inconsistent obligations: MPS could be enjoined from implementing provisions that the Union simultaneously seeks to enforce through the grievance and arbitration process. DOJ has an adequate alternative vehicle—a § 706 action filed upon receipt of a charge from an individual teacher or applicant—that does not generate the Rule 19 problem DOJ's own litigation strategy has created. Rule 19's structural requirements do not bend to accommodate DOJ's preferred litigation vehicle.

## CONCLUSION

DOJ filed a § 707 action challenging the theoretical application of contractual provisions without identifying a single instance in which those provisions were actually applied to harm anyone. Section 707 was designed for cases with numerous individual victims. DOJ has found none. That silence is the loudest fact in this record.

The jurisdictional defects and indispensable-party problem are independently fatal, and DOJ's own litigation choices created both. The *Teamsters* standard requires proof that discrimination is "the regular rather than the unusual practice"—the employer's standard operating procedure. DOJ's Complaint, by its own terms, challenges limited exceptions to Defendants' standard operating procedure, which is seniority-based placement governed by Article 15's default rules. The BMT MOA ceased to exist before

13

this suit was filed; enjoining a non-existent agreement is not a remedy. And the Union whose bargained-for rights would be extinguished by the relief DOJ seeks is absent from these proceedings through no fault of its own—a structural defect Rule 19 exists to prevent.

For these reasons, and for those set forth in Defendants' opening brief, the motion to dismiss should be granted.

[SIGNATURE BLOCK ON FOLLOWING PAGE]

14

Respectfully submitted,

**RATWIK, ROSZAK & MALONEY, P.A**.

Dated: March 16, 2026        By: */s/ Timothy A. Sullivan*
                  Timothy A. Sullivan (#391526)
                  Ratwik, Roszak & Maloney, P.A.
                  444 Cedar St., Suite 2100
                  Saint Paul, MN 55101
                  (612) 339-0060
                  tas@ratwiklaw.com

          **ATTORNEYS FOR DEFENDANTS**